## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| JAMES SPURLOCK, SR., ET AL. | CIVIL ACTION NO. 06-0192 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHASE BANK, N.A., ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment filed by the plaintiffs, James Spurlock, Sr. and Shelby Spurlock. [Doc. No. 22]. Plaintiffs' filed this suit to nullify a default judgment rendered against James Spurlock, Sr. in December of 1999. Specifically, Spurlock, Sr. claims that he was never served with process as required by the Fourteenth Amendment or Louisiana state law. Defendant J.P. Morgan Chase Bank, N.A. (successor to Homer National Bank, Premier Bank, N.A., and Bank One, Louisiana, N.A.) contends that Spurlock was properly served, but that even if he was not, his nullity action is barred because he acquiesced in the December of 1999 judgment. For the reasons which follow, the plaintiffs' motion for partial summary judgment is **DENIED**.

### RELEVANT FACTUAL BACKGROUND

On August 18, 1998, Bank One, N.A.[1] ("Bank One") filed suit against Craig Spurlock[2] ("Craig") in the Second Judicial District Court for Claiborne Parish (docket number 33,895), Louisiana based on a promissory note executed by Craig in favor of

---

[1] Bank One, N.A. has been succeeded by J.P. Morgan Chase Bank, N.A. in these proceedings as a result of various mergers and acquisitions.

[2] Craig Spurlock is not a party to this litigation; he is, however, the son of James Spurlock, Sr., plaintiff herein.

Homer National Bank.[3] The original principal sum of the note was $ 38,910.34 with interest of 10.5% per annum. Bank One sought the issuance of a writ of seizure ordering the Sheriff of Claiborne Parish to seize and sell the vehicle that served as a security interest for the promissory note. Bank One was not able to obtain the seizure of the vehicle.

On August 23, 1999, Bank One filed an amended petition with the Second Judicial District Court seeking to convert the suit to a regular proceeding and adding James Spurlock as a party defendant. The records of the state court proceedings show that personal service was made on James Spurlock on September 7, 1999 at the address of 1735 Highway 159, Arcadia, Louisiana. The plaintiffs contend that service was actually made on James Spurlock, Jr., the son of the intended defendant.

On December 15, 1999, Bank One obtained a default judgment against Craig Spurlock and James Spurlock, *in solido*, in the amount of $ 32,696.81 on the principal sum due, $ 11,224.47 in interest and $ 1,446.00 in attorney's fees. The judgment was filed on December 16, 1999. The judgment was recorded in the mortgage records of Claiborne Parish, Louisiana.

On March 10, 2000, Bank One filed a Rule for Judgment Debtor Examination in the same suit seeking to perform the judgment debtor examinations of both Craig Spurlock and James Spurlock. In June of 2000, Bank One took the judgment debtor examination of James Spurlock, Sr.[4]

---

[3]Homer National Bank was the original holder of the promissory note. Homer National Bank was succeeded by Premier National Bank which subsequently changed its name to Bank One.

[4]The defendant submitted the affidavit of Keith Carter to establish that James Spurlock, Sr. submitted to a judgment debtor exam in June of 2000. Although plaintiffs' deny this in their reply brief [Doc. No. 30 at 9 n.4], no competent summary judgment evidence was submitted to that effect. While plaintiff testified via affidavit that he was not served with the judgment debtor rule, he did not testify that he never submitted to an exam.

In 2001, Bank One filed a petition to make the Judgment against James Spurlock executory and served garnishment interrogatories on First National Bank (which held James Spurlock's checking account). Ultimately, James Spurlock, Sr.'s checking account was frozen and his assets in that account were seized.

In early 2005, the plaintiffs applied for credit from Bancorp South in Ruston, Louisiana. Bancorp South discovered the recorded judgment and refused to loan the plaintiffs any funds until the judgment was removed from the mortgage records. Accordingly, the plaintiffs paid $ 30,000 to satisfy the judgment against them and have it cancelled in the Claiborne Parish mortgage records.

Plaintiffs filed the instant suit seeking, *inter alia*, nullification of the default judgment rendered against them in state court on December 15, 1999 on the grounds that James Spurlock was never served with process as required by the Fourteenth Amendment or the Louisiana *Code of Civil Procedure*.

On January 19, 2007, the plaintiffs filed a motion for partial summary judgment seeking declaration that the judgment rendered against James Spurlock in state court is constitutionally null and void, that the recordation of the judgment by the defendant and its refusal to cancel the subject judgment from the mortgage records of Claiborne Parish were "wrongful, illegal and intentional acts in furtherance of the violation of the constitutional right [sic] of petitioners" and that the defendant is "justly and truly liable to petitioners."

## LAW AND ANALYSIS

The plaintiffs seek to annul the default judgment entered against them because they contend that service of process was not made as required by law. However, this Court need not reach that issue if it finds, as the defendant contends, that the plaintiffs

acquiesced in that judgment. Accordingly, the Court will address the issue of acquiescence first.

**A.     Nullification of Judgment under Louisiana Law.**

Louisiana Code of Civil Procedure article 2002 provides:

> A.   A final judgment shall be annulled if it is rendered:
>
> \*\*\*
>
> (2)   Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction or against whom a valid judgment of default has not been taken.
>
> \*\*\*
>
> B.   Except as otherwise provided in Article 2003, an action to annul a judgment on the grounds listed in this article may be brought at any time.

Louisiana Code of Civil Procedure article 2003 provides:

> A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.

Accordingly, under Louisiana law, if this court finds that the plaintiffs either were present in Claiborne Parish at the time that the judgment was executed or that they voluntarily acquiesced in the judgment, then the plaintiffs are not entitled to a judgment declaring the state court default judgment to be a nullity.

**B.     Acquiescence in the Judgment under Louisiana Law.**

Louisiana courts look to the behavior of the debtor to determine whether he voluntarily acquiesced in the judgment or rather took active steps to prevent its execution. For example, in DLJ of Louisiana #1 v. Green Thumb, Inc, 376 So. 2d 121 (La. 1979), the debtor sought to have a default judgment rendered against it declared to be an absolute nullity under C.C.P. art. 2003. In that case, the creditor attempted to execute the default

judgment that was rendered against the debtor while the delays for filing a suspensive appeal were still running. Id. The debtor took a suspensive appeal and instituted a nullity action before paying the judgment to prevent the seizure of its property. Id. The court held that based on the record, it was clear that the debtor did not voluntarily pay the judgment, but rather merely "bought time": "Not to have paid at this point would have subjected [the debtor's] business to the jeopardy of the auction block." Id. at 123. See also Ray v. South Central Bell Telephone Co., 303 So. 2d 877 (La. App. 1st Cir. 1974)(no acquiescence because the payment was made to prevent the seizure of personal property and the action for nullity was brought within eleven weeks of notice of the issuance of the writ of seizure).

On the other hand, courts have found voluntary acquiescence where a debtor pays a judgment for reasons other than to prevent its execution.[5] For example, in Hinchman v. Oubre, 539 So. 2d 94, 95 (La. App. 5th Cir. 1989), the debtor sued for nullification of a default judgment rendered against him on the grounds that he was never served with notice. The trial court denied his nullity action. Despite the debtor's contention that he made the assignment to "get them off of [his] back to a place that [he could] go ahead with [his] business" because he was "out of business until the matter was 'squared away'," the Louisiana Fifth Circuit found that he had voluntary acquiesced in the judgment. In distinguishing DLJ of Louisiana #1 v. Green Thumb, Inc, 376 So. 2d 121 (La. 1979), the Hinchman court noted that the debtor in DLJ had prevented enforcement of the judgment by its payment and had instituted a nullity action very shortly thereafter. Id. To the contrary, the debtor here had made an assignment of monies "to get some property released *after the seizure*, but not to buy time to attack the judgment..." Id at 97 (emphasis

---

[5]The Court agrees with the plaintiffs that Greater New Orleans Homestead, FSB v. David, 673 So.2d 1078 (La. App. 5 1996) is distinguished from the case at bar.

in original). Accordingly, the court found the debtor had voluntarily acquiesced, noting that "courts look to the behavior of the debtor to determine whether he voluntarily acquiesced in the judgment or took active steps to prevent its execution." Id at 96.

Based on the foregoing, whether the plaintiffs voluntarily acquiesced in the 1999 default judgment will depend upon why they made the payment and the time delays involved. Here, the default judgment was rendered in December of 1999. The plaintiff submitted to a judgment debtor exam in June of 2000. While that alone would not constitute voluntary acquiescence, see Donnelly v. Quatroy, 866 So.2d 917 (La. App. 5 Cir. 2004), it surely establishes that plaintiff knew of the judgment against him and was on notice that Bank One was taking steps towards its enforcement. Indeed, in 2001, the judgment was made executory and plaintiff's bank account was seized. However, plaintiff made no attempt whatsoever to prevent enforcement of the judgment. Instead, he simply opened a new banking account at another bank.[6]

It was not until the plaintiffs attempted to secure a loan in 2005 that they decided, much like the plaintiff in Hinchman v. Oubre, 539 So. 2d 94, 95 (La. App. 5th Cir. 1989), to "square up the matter" and satisfy the judgment so they could "get on with business." Plaintiffs were not "buying time." They paid the judgment sometime between February and May of 2005. The instant nullity action was not filed until February of 2006, seven years after the default judgment was rendered, six years after the alleged plaintiff's judgment debtor exam, and almost a year after the judgment was paid. The payment was not made to prevent execution of the judgment or to buy time. Instead, payment was made to cancel

---

[6]As stated above, the Court recognizes that plaintiffs' deny, without benefit of competent summary judgment evidence, that James Spurlock, Sr. ever submitted to the judgment debtor exam. However, even assuming that he did not attend the exam, the Court finds that the plaintiffs' failure to act when their bank accounts were frozen and seized in 2001 is sufficient to find voluntary acquiescence.

a judicial mortgage on the plaintiffs' home so they could obtain a business loan for Mrs. Spurlock's telecommunications business. Under the facts of this case, the Court finds that the plaintiffs voluntarily acquiesced in the judgment and that the instant nullity action is barred by Article 2003. Accordingly, whether James Spurlock, Sr. received service of process is immaterial.

## CONCLUSION

For the foregoing reasons, the Court finds that the plaintiffs acquiesced in the default judgment rendered against them. Accordingly, the instant nullity action is barred by Louisiana Civil Code article 2003. The Court construes the defendant's request for judgment in its favor declaring the plaintiffs' nullity suit barred [see Doc. No. 29-1 at 9] as a motion for summary judgment, which is hereby **GRANTED.**

Therefore:

**IT IS ORDERED** that plaintiffs' motion for partial summary judgment [Doc. No. 22] is hereby **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED**, and plaintiffs' claims are hereby **DISMISSED, WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 14th day of September, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE